UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| NORMAN TUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15CV17 SNLJ |
| | ) | |
| PATRICIA KAROL, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion for summary judgment. Plaintiff has not filed a response and the time for doing so has expired. The motion is ripe for disposition. For the following reasons, the Court will grant the motion.

## I. Background

Plaintiff Norman Tucker, a civil detainee formerly housed at the Ste. Genevieve County Detention Center, filed this 42 U.S.C. § 1983 claim against defendant Patricia Karol, Assistant Jail Administrator of the Detention Center, alleging claims of failure to protect in violation of the Fourteenth Amendment. In his complaint, plaintiff alleges that a fellow civil detainee, Larry Johnson, raped him, attempted to rape him during a second encounter, assaulted him by punching and choking him during a third encounter, and that he suffered migraine quality headaches, nightmares of sexual assaults, and night sweats because he was housed in the same cell block as Johnson. Plaintiff alleges that defendant was deliberately indifferent to his right to be reasonably free from harm by placing plaintiff in the same cell block with the civil detainee that raped and assaulted him after

she had knowledge of the rape and attempted rape and knowing of the detainee's history of "raping youngish white inmates." Plaintiff further alleges that defendant had the power and authority to prevent the rape, attempted rape, and assault. Plaintiff seeks actual and punitive damages as well as injunctive relief requesting transfer to another facility.

## II.     Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324.

Plaintiff's pro se status does not excuse him from responding to defendant's motion with specific factual support for his claims to avoid summary judgment, *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001), or from complying with local rules, *see Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983). The movant's statement of facts are deemed admitted if not specifically controverted by the opposing party. E.D. Mo. L.R. 4.01 (E). However, "[t]he Eighth Circuit has determined that when a plaintiff fails

to respond adequately to a motion for summary judgment, a district court should not treat such a non-response as sufficient to dispose of the motion." *Lowry v. Powerscreen USB, Inc.*, 72 F.Supp.2d 1061, 1064 (E.D. Mo. 1999) (citing *Canada v. Union Electric Co.*, 135 F.3d 1211, 1213 (8th Cir. 1997). "Courts should proceed to examine those portions of the record properly before them and decide for themselves whether the motion is well taken." *Id.* "In so ruling, even on an unopposed motion for summary judgment, the court should review the facts in a light most favorable to the party who would be opposing the motion." *Id.*

**III. Facts**

Plaintiff failed to specifically controvert defendant's statement of facts and, therefore, those facts are deemed admitted for this motion. *O'Connell v. Accurate Plumbing, LLC*, 4:04CV1368 FRB, 2005 WL 2176926, at *2 (E.D. Mo. Sept. 8, 2005) (citing *Northwest Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 724-25 (8th Cir. 2003); *Harris v. Interstate Brands Corp.*, 348 F.3d 761, 762-63 (8th Cir. 2003)). The undisputed facts, as supported by the record, are set forth below.

From December 8, 2010 through September 10, 2015, defendant Sgt. Patricia Karol was employed at the Ste. Genevieve County Sheriff's Office and Detention Center ("Detention Center").[1] On March 1, 2012, defendant became the Assistant Jail Administrator for the Detention Center. Plaintiff Norman Tucker was a civil detainee housed at the Detention Center from February 12, 2014 until March 21, 2015 awaiting

---

[1] Defendant Karol's Affidavit is dated September 10, 2015.

trial to determine if permanent commitment to the Missouri Department of Mental Health as a Sexually Violent Predator was warranted.

Upon booking at the Detention Center, each inmate is instructed as to how to access the Ste. Genevieve County Sheriff's Office Detention Center Operational Procedures & Policy ("Inmate Handbook") through a computer kiosk located on each cell block. On February 12, 2014, plaintiff arrived at the Detention Center and was assigned to cell block F. Plaintiff was instructed as to how to access the Inmate Handbook through the kiosk.

Larry Johnson was a fellow civil detainee being held in cell block F pending adjudication as a Sexually Violent Predator at the time plaintiff arrived at the Detention Center. Johnson resided at the Detention Center until September 9, 2014. Defendant did not have any information regarding Johnson's criminal history, psychiatric diagnosis, or sexual orientation. Defendant does not receive any information regarding any civil detainees relative to their past criminal history, psychological profiles, or sexual orientation, including plaintiff's. Defendant had no actual knowledge of whether Johnson had any history of violence or sexual attraction to men. Defendant had no reason to believe Johnson would be violent at the time of plaintiff's detention or that he would be attracted sexually to plaintiff thereby placing plaintiff at a greater risk than the detainee population at large.

On April 18, 2014, plaintiff reported to defendant that he was "afraid" and requested protective custody. Plaintiff did not state why or of what he was afraid. Defendant removed plaintiff from cell block F and placed him in protective custody by

placing him in a holding cell.  As of April 18, 2014, defendant had no knowledge of any actual or alleged attacks or threats by Johnson as to plaintiff.  At that time, the policy of the Detention Center was that whenever a civil detainee requested protective custody the request was granted immediately with no stated reason necessary.

There are two procedures for protective custody, sometimes referred to as "lock down," in the Detention Center.  The first consists of removing a detainee from the cell block and placing the detainee in a holding cell.  The second consists of leaving the detainee in the cell block, but placing the detainee in a cell where the door remains locked preventing unauthorized ingress or egress into the common area or other cells within a cell block.  Each cell contains an intercom connected to the Detention Center Control Room.  Cell doors are locked and unlocked electronically from the Control Room.  Individuals may use the intercom to contact the Detention Center Control Room and Detention Center employees can lock and unlock cell doors for ingress or egress.

On April 21, 2014, plaintiff informed defendant in writing by means of an Inmate Request that his safety was no longer an issue, he did not need protective custody, and would like to be "off lockdown" and returned to cell block F.  At that time, Johnson was still detained in cell block F.  Plaintiff was removed from protective custody at his request.

On June 13, 2014, plaintiff stated that he was afraid for his life and requested protective custody.  Plaintiff did not state why he was afraid.  Plaintiff was placed in protective custody the same day.  On June 14, 2014, plaintiff requested, in writing pursuant to an Inmate Request form, to be removed from protective custody, as he was

5

"… not in fear of [his] life anymore." Plaintiff did not explain what, if any, change in circumstance had occurred to alleviate his fear. On June 14, 2014, plaintiff was removed from protective custody at his request.

Plaintiff did not report any other concerns regarding his safety or any incidents between plaintiff and Johnson until August 1, 2014. On August 1, 2014, plaintiff alleged that Johnson entered plaintiff's cell, they began arguing, and Johnson shoved plaintiff. Plaintiff immediately called Detention Center staff and reported the incident. Staff ordered Johnson to leave plaintiff's cell and he complied. Johnson was placed in disciplinary solitary confinement from August 1, 2014 to August 6, 2014.

On or about August 6, 2014, detainee Johnson was returned to cell block F, though a different cell than plaintiff, as defendant believed that Johnson presented no significant threat of serious physical harm to plaintiff and there was no other location within the Detention Center to house Johnson. The Detention Center consists of eight cell blocks. One block is reserved for civil detainees. It is the policy of the Detention Center to house civil detainees separately from the general population of prisoners due to different standards of confinement enjoyed by civil detainees and to maintain order within the Detention Center. Defendant did not receive any reports of any further incidents between plaintiff and Johnson between August 6, 2014 and September 9, 2014. On or about September 9, 2014, detainee Johnson was removed from cell block F and subsequently transferred from the Detention Center to another facility.

On October 6, 2014, plaintiff again alleged that he was fearful for his safety and wanted to be placed in protective custody. On the same day, plaintiff admitted that he

6

lied about being fearful and asked to be removed from protective custody. Detention Center staff believed plaintiff was using protective custody in an attempt to manipulate staff.

**IV.     Discussion**

Defendant contends that plaintiff's claim against her in her official capacity for injunctive relief is moot as he is no longer a resident of the Detention Center. This Court agrees that plaintiff's transfer to another facility rendered his claim for injunctive relief moot and will grant summary judgment in favor of defendant on that claim. *See Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (prisoner's claim for injunctive relief is moot when he has been transferred to another facility and is no longer subject to alleged unlawful conditions).

Further, defendant claims that she is entitled to judgment as a matter of law on plaintiff's claim against her in her official capacity because defendant does not allege, and there is no evidence, that the complained of conduct is the result of a policy or custom of the Detention Center. To state a claim against defendant in her official capacity, plaintiff must allege that a policy or custom of the Detention Center is responsible for the alleged constitutional violation. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690–91 (1978). The complaint does not allege, and no evidence has been presented, that a policy or custom of the Detention Center was responsible for the alleged violations of plaintiff's constitutional rights. As a result, the Court will grant summary judgment in favor of defendant on the claim against her in her official capacity.

As to plaintiff's claim against defendant in her personal capacity, defendant argues she is entitled to judgment as a matter of law because she was not aware of a serious risk of harm to plaintiff prior to, or after, the August 1, 2014 incident. The Eighth Amendment requires prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation omitted). Although the Eighth Amendment applies directly only to convicted prisoners, the Fourteenth Amendment provides civilly committed individuals and other detainees "at least the same level of constitutional protection as the Eighth Amendment." *Nelson v. Shuffman*, 603 F.3d 439, 446 n. 3 (8th Cir.2010) (considering failure-to-protect claims brought by a detainee living in a sex offender treatment center under the standards applicable to prisoners' failure-to-protect claims); see also *Youngberg v. Romeo*, 457 U.S. 307, 315–16 (1982). Not every prisoner-inflicted injury amounts to a constitutional violation. *Farmer*, 511 U.S. at 834. To establish a failure-to-protect claim under the Eighth or Fourteenth Amendments, a prisoner or detainee must demonstrate that the defendant prison official was "deliberately indifferent to a 'substantial risk of serious harm.'" *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007) (quoting *Farmer*, 511 U.S. at 828).

"To prove deliberate indifference, an inmate must make a two-part showing: The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a 'sufficiently culpable state of mind." *Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010) (internal quotation marks and citation

omitted). "The deprivation is objectively, sufficiently serious, [under the first requirement when] the official's failure to protect resulted in the inmate being 'incarcerated under conditions posing a substantial risk of serious harm." *Id.* (internal quotation marks and citation omitted). "An official is deliberately indifferent [under the second requirement] if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Id.* (internal quotation marks and citation omitted). Merely negligent conduct is insufficient. *Farmer*, 511 U.S. at 835.

"When considering the first requirement, the assailant's conduct can provide the court the most probative evidence of the degree and type of risk that [the inmate] faced." *Id.* (internal quotation marks and citation omitted). When considering the second requirement, plaintiff must show that defendant "exhibited a sufficiently culpable state of mind, that is, [she] must have been deliberately indifferent to the substantial risk of serious harm to [plaintiff]. *Nelson*, 603 F.3d at 447 (citation omitted). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Id.* (citation omitted). "The question of whether the official knew of the substantial risk is a factual one subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* (internal quotation marks and citation omitted). Plaintiff need not show "that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* (citation omitted).

For the first time following plaintiff's detention at the Detention Center, on April 18, 2014, plaintiff reported to defendant that he was "afraid," requested protective custody, and was placed in protective custody the same day. According to plaintiff's complaint, this was after Johnson allegedly raped him and attempted to rape him during a second encounter. Based on the undisputed facts, plaintiff did not notify defendant of the rape or attempted rape by Johnson. Three days later, plaintiff informed defendant in writing that he no longer needed protective custody and that he wanted to be off protective custody lock down and placed back into cell block F. Plaintiff stated "[s]afety is not an issue anymore."

The first report defendant received of an altercation between plaintiff and Johnson was on August 1, 2014. On that date, plaintiff reported that Johnson entered his cell, they began arguing, and Johnson shoved him. Detention Center staff ordered Johnson to leave plaintiff's cell and he complied. Johnson was placed in disciplinary solitary confinement for five days. Prior to the August 1, 2014 incident, plaintiff had not reported any incidents between himself and Johnson, any threats by Johnson, or that he feared for his safety with regard to Johnson. Based on the undisputed facts, there is no evidence that defendant was deliberately indifferent to a substantial risk of serious harm to plaintiff prior to the August 1, 2014 incident.

After the August 1, 2014 incident, plaintiff claims that he suffered migraine quality headaches, nightmares of sexual assaults, and night sweats because he was in the same cell block as Johnson. There is no evidence that defendant was deliberately indifferent to a substantial risk of serious harm to plaintiff after the August 1, 2014

10

incident. That incident was reported as an argument that involved Johnson shoving plaintiff and nothing more. Further, "[b]ecause a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation." *Schofield v. Hopkins*, 2:12CV28 NAB, 2015 WL 5732051, at *4 (E.D. Mo. Sept. 30, 2015) (quoting *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008)). There is no medical evidence supporting plaintiff's claim that he suffered migraine quality headaches, nightmares of sexual assaults, and night sweats or as to the cause of these alleged damages.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (ECF #22) is **GRANTED**. A separate judgment shall accompany this Memorandum and Order.

Dated this 1st day of December, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE